UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT | CIVIL ACTION NO. 12-0712 |
| VERSUS | JUDGE ROBERT G. JAMES |
| MARQUETTE TRANSPORTATION COMPANY, LLC and JOHN DOE | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 66] filed by Plaintiff Louisiana Department of Transportation and Development ("DOTD"). Defendant Marquette Transportation Company, LLC ("Marquette") has filed an opposition memorandum [Doc. No. 124], both opposing DOTD's motion and moving for summary judgment in its favor. DOTD has filed a reply memorandum [Doc. No. 153].

DOTD contends that there is no genuine issue of material fact for trial that Marquette is "solely at fault and liable to the DOTD for the damages regarding the emergency response and costs of repairs to the aggravation of scouring in proximity to the I-20 Bridge spanning the Mississippi River, stemming from the allusion involving Marquette's vessel, the 'M/V KAY A. ECKSTEIN' and its tow, and the Highway I-20 Bridge on March 23, 2011." [Doc. No. 66, p. 1]. Marquette opposes DOTD's Motion for Summary Judgment, alleging that maritime presumptions are improper in this case. Marquette further opposes DOTD's Motion for Summary Judgment and moves for summary judgment in its favor on the basis that DOTD lacks evidence necessary to prove an element of its claim of liability.

For the following reasons, DOTD's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and Marquette's motion for summary judgment, contained in its Opposition, is DENIED.

I.     **FACTS**

This case arises from the sinking of a barge on the Mississippi River. On the afternoon of March 23, 2011, a tug owned by Marquette, the M/V KAY A. ECKSTEIN, was southbound on the Mississippi River pushing a 30-barge tow. The river stage of 41.58 feet was high and rising, and the current was strong. While passing through the old I-80 bridge, barge BUNGE-489, the second lead barge from starboard, struck the left descending channel span pier (also referred to as the number 2 pier) of the bridge, causing the tow to break apart at 1430 hours. The starboard lead barge, SCF-2301, was set adrift and contacted the left descending channel span ("Pier E-1") of the I-20 bridge.[1]

On March 23, 2011, Herman Smith, a Superintendent of the Vicksburg Bridge Commission, was on duty when he received a telephone call from Albert Smith at Ergon Marine & Industrial Supply, Inc. ("Ergon Marine") notifying him that an allision[2] was imminent. Herman Smith checked the position and operation of the Vicksburg Bridge Commission's cameras and then went outside where he witnessed the allision. After observing Ergon Marine vessels assisting in the collection of the barges, within 30-45 minutes of the allision, Herman Smith called Albert Smith to suggest that they push the SCF-2301 off Pier E-1 and into the navigation channel. However, SCF-2301 remained lodged at Pier E-1 for approximately 2 hours until it spiraled down into a ninety-degree rotation to

---

[1] LDOT has not alleged in its Complaint or subsequent filings that the sinking of the barge resulted in damage to the piers or in pier movement.

[2] "An allision is a collision between a moving vessel and a stationary object." Thomas J. Schoenbaum, Admiralty & Maritime Law, § 14-2 (4th ed. 2004).

the bed of the Mississippi River, where it came to rest at a perpendicular angle against the base of the pier.

During the time the barge remained in the Mississippi River, DOTD,[3] obtained authority to address issues regarding scouring.[4] Scouring, a type of erosion, is the removal of sediment, such as sand and rocks from river banks and beds, which occurs as a result of swiftly moving waters. If not addressed, scouring can undermine bridge stability.

Between May 2010, when a hydrographic survey of the Mississippi River at the vicinity of the 1-20 Bridge had last been taken and April 4, 2011, when a post-allision survey was taken, the scour hole had increased by 678 cubic yards. Following the allision, DOTD contracted with Lurh Brothers to place 27,349 cubic yards of riprap in the scour hole.[5]

After at least five unsuccessful attempts, on April 19, 2011, the SCF-2301 barge was removed from the Mississippi River.

## II.   LAW AND ANALYSIS

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the

---

[3] DOTD has a proprietary interest in the I-20 bridge.

[4] The April 4, 2011 State of Emergency declared by Government Bobby Jindal does not specifically mention anything about the Mississippi River or scouring, but DOTD indicates that this State of Emergency provided the authority for addressing the scouring.

[5] DOTD explains that this is approximately 40,000 tons or 80 million pounds of rip rap.

basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

> The Fifth Circuit Court of Appeals has instructed that, when no jury demand is made, a
>
> court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . . A trial on the merits would reveal no additional data. Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony. The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

*Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978) (citations omitted). Thus, where "the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions." *Id.; see also Matter of Placid Oil*

*Co.*, 932 F.2d 394, 397-98 (5th Cir. 1991) (same).

### B. Liability

This case arises under maritime law. Maritime negligence requires the plaintiff to demonstrate that (1) the defendant owed a duty to plaintiff; (2) the defendant breached that duty; (3) the plaintiff sustained an injury; (4) and defendant's conduct was the actual and proximate cause of plaintiff's injury. *In Re: Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991) (citing *Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir. 1985)). Actual cause is "but for" causation. *Thomas*, 759 F.2d at 448. To establish proximate cause, the plaintiff must prove that the negligence was a substantial factor in bringing about the alleged harm. *Id.*

There are two common presumptions of fault, however. In *THE LOUISIANA,* 3 Wall. (70 U.S.) 164, 173, 18 L.Ed. 85 (1866)*,* the Supreme Court applied a presumption of fault when a drifting vessel allides with a stationary object. *Id.* ("The collision being caused by the Louisiana drifting from her moorings, she must be liable for the damages consequent thereon, unless she can show affirmatively that the drifting was the result of inevitable accident, or a vis major, which human skill and precaution, and a proper display of nautical skill could not have prevented."); *see also Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 604 (5th Cir. 2010) (citation omitted); *Kansas City Southern R.R. Co. v. Barge HBC*, 642 F. Supp. 609, 612 (W.D. La. 1986) (citing *James v. River Par. Co., Inc.*, 686 F.2d 1129, 1132-33 (5th Cir. 1982) ("The law is well established that when a drifting vessel causes damage, an inference arises as a matter of law that the vessel was adrift through negligence."). In *THE OREGON* case, the Supreme Court applied the same presumption of fault "that shifts the burden of production and persuasion to a moving vessel who, under her own power, allides with a stationary object." *Combo Maritime,* 615 F.3d at 604

(citing *THE OREGON*, 158 U.S. 186 (1895)).

Once evidence is presented, these presumptions are "'superfluous,'" *Combo Maritime*, 615 F.3d at 605 (quoting *In re Mid-South Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005) (other citations omitted)), and "'[a]pplication . . . does not supplant the general negligence determination which requires a plaintiff to prove the elements of duty, breach, causation and injury by a preponderance of the evidence.'" *Id.* (quoting *City of Chicago v. M/V MORGAN*, 375 F.3d 563, 572-73 (7th Cir. 2004) (other citations omitted)). "'Under the general maritime law, a party's negligence is actionable only if it is the legal cause of the plaintiff's injuries,' which is 'something more than but for causation [—]the negligence must be a substantial factor' in causing the injuries." *In re Great Lakes Dredge & Dock Co., LLC,* 624 F.3d 201, 213-14 (5th Cir. 2010) (quoting *Donaghey v. Ocean Drilling & Explor. Co.*, 974 F.2d 646, 649 (5th Cir. 1992) (other internal quotation marks omitted)).

In this case, DOTD argues that it is entitled to summary judgment on the issue of liability because *THE OREGON* and *THE LOUISIANA* Rules apply, and Marquette has failed to rebut the presumption of liability. Alternatively, DOTD argues that Marquette is liable as a matter of law under general negligence principles because its pilot breached a duty to safely and skillfully navigate the Mississippi River. Finally, DOTD argues that Marquette is liable in negligence for failing to "re-secure and collect its drifting barges," including SCF-2301, on the date of the allision.

Marquette opposes DOTD's motion and moves for summary judgment in its favor. Marquette cites the Court's July 18, 2013 Ruling [Doc. No. 115] and argues that the presumptions cannot apply when it is undisputed that there was no damage to the I-20 bridge. Marquette contends that DOTD is not entitled to a liability finding because its basis for recovery is aggravation of a "scour hole downriver 400'," and "DOTD does not allege that the barge physically contacted the

downriver scour hole." [Doc. No. 124, p. 3]. Marquette argues further that the presumptions are those of fault, not causation, and the presumptions fail where evidence is introduced to the contrary. Finally, Marquette argues that, in fact, it, not DOTD, is entitled to summary judgment because DOTD lacks any evidence that the barge was the proximate cause of aggravation of the scour hole.

It is undisputed that the M/V KAY A. ECKSTEIN struck the I-80 bridge, a stationary object, and that this allision caused SCF-2301 barge to drift until it allided with Pier E-1 of the I-20 bridge, also a stationary object. To this extent *THE OREGON* and *THE LOUISIANA* Rules apply, and Marquette presumed at fault for consequential damages. Marquette has offered no evidence to show that either the original allision or the subsequent drifting of the barge SCF-2301 into Pier E-1 was an inevitable accident or act of God or to support another viable defense.[6] Because Marquette has failed to rebut the presumption of fault, DOTD is entitled to judgment as a matter of law on fault.[7]

Additionally, DOTD has argued, and Marquette has offered no opposition, that Marquette breached a duty in failing to move the SCF-2301 barge away from Pier E-1 during the two hours

---

[6] Although Marquette notes that it is not the owner of the SCF-2301 barge, DOTD correctly points out that Marquette remains liable as the custodian of the barge. *See Pillsbury Co. v. Midland Enterprises, Inc.*, 715 F. Supp. 738, 758 (E.D. La. 1989) ("When an unmanned barge strikes a stationary object . . ., the custodian of the barge has the burden to prove that his negligence was not a proximate cause of the allision. . . Where the barge is in the custody of a towboat, the barge's custodian is held to include both the operator . . . (including the towboat captain's employer) . . . and the owner of the towboat. . . This burden-shifting . . . applies whether or not the barge breaks loose from its custodian, . . . and whether or not the barge was owned by its custodian.") (citations omitted).

[7] Even if *THE OREGON* and *THE LOUISIANA* Rules did not apply, under general principles of negligence, Hugh Low, the pilot of the M/V KAY A. ECKSTEIN, owed a general duty of reasonable care in his operation of a vessel navigating on the Mississippi River. DOTD argues that Low breached that duty, and Marquette is presented no evidence to the contrary. Thus, even under general principles of negligence, Marquette is liable for damages actually and proximately caused by its negligence.

before it sunk to the bottom of the Mississippi River and for the twenty-seven-day period it remained lodged there.[8] Thus, DOTD has also established the first two elements of negligence and is entitled to judgment as a matter of law on fault in this manner.

However, the Court's determination that DOTD has generally established Marquette's fault does not resolve the cross-motions for summary judgment. At trial, DOTD must prove by a preponderance of the evidence that Marquette's fault actually and proximately caused any damages it seeks to recover. Marquette has responded to DOTD's motion with its own motion for summary judgment, contending that DOTD cannot establish that its negligence (its fault) was a "substantial factor" in the aggravation of the scouring. [Doc. No. 124, p. 4]. At worst, Marquette contends that it could be liable only for the 678 cubic yard difference between the May 2010 and April 4, 2011 hydrographic surveys.

In a reply, DOTD responds that it seeks judgment only on the issue of liability and contends that a genuine issue of material fact for trial remains on the proximate cause and amount of its damages. DOTD argues that there is a clear chain of events resulting in its incurring of emergency costs. While DOTD contends that it is entitled to recover damages, including the repair of the scouring, DOTD admits that there is a dispute over the amount of scouring that occurred while the barge was submerged.

The Court has reviewed the parties' exhibits and arguments, including the expert opinions, and finds that there are genuine issues of material fact for trial on causation (both actual and

---

[8]The Court is aware that Ergon Marine has been made a defendant in this action and expresses no opinion in this Ruling whether Marquette's fault is attributable, in whole or in part, to Ergon Marine, whether DOTD has a claim against Ergon Marine, or whether Marquette has a claim against Ergon Marine.

proximate) and damages, including the aggravation of the scouring. Thus, to the extent that DOTD has moved for summary judgment on "liability," it has failed to establish causation as a matter of law, and its Motion for Summary Judgment is DENIED. Likewise, Marquette has failed to show that DOTD cannot meet its burden at trial, and Marquette's motion for summary judgment is also DENIED.[9]

**III. CONCLUSION**

For the foregoing reasons, DOTD's Motion for Summary Judgment [Doc. No. 66] is GRANTED IN PART and DENIED IN PART. The Court finds that DOTD has established Marquette's fault in this matter, but must prove causation and damages at trial. Marquette's motion for summary judgment, contained in its Opposition [Doc. No. 124], is DENIED.

MONROE, LOUISIANA, this 21st day of October, 2013.

*[signature]*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[9] Given the procedural posture of the motions, the Court believes that it has addressed all issues related to summary judgment. However, Marquette also argued that, at worst, it could only be held liable in damages for the 678 cubic yard difference between the May 2010 and April 4, 2011 hydrographic surveys. While that argument is more appropriately couched as a motion in limine, it is a matter of both law and common sense that DOTD will not recover at trial any amounts expended to address scouring (or any other problem) which pre-existed the March 23, 2011 allision. The Court has previously granted summary judgment and excluded DOTD's claim that the allision was the original cause of the scouring; thus, only the *aggravation* of the scouring is recoverable in damages if DOTD meets its burden of proof.