UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

LOUISIANA DEPARTMENT OF                    CIVIL ACTION NO. 12-0712
TRANSPORTATION AND DEVELOPMENT

VERSUS                                      JUDGE ROBERT G. JAMES

MARQUETTE TRANSPORTATION                    MAG. JUDGE KAREN L. HAYES
COMPANY, LLC, ET AL.

RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 170] filed by

Defendant Ergon Marine & Industrial Supply, Inc. ("EMIS"). EMIS moves the Court to dismiss all

claims asserted against it by Plaintiff Louisiana Department of Transportation and Development

("DOTD") under the doctrine of laches. DOTD has filed an opposition memorandum [Doc. No.

172]. EMIS has filed a reply memorandum [Doc. No. 173]. DOTD has also filed a sur-reply

memorandum [Doc. No. 184].

Additionally, DOTD has filed a related Motion to Strike/*in Limine* ("Motion to Strike") [Doc.

No. 185], moving the Court to exclude the affidavit of Danny Koestler. EMIS filed an opposition

memorandum [Doc. No. 193]. DOTD filed a reply memorandum [Doc. No. 196], and Ergon filed

a sur-reply memorandum [Doc. No. 201].

For the following reasons, DOTD's Motion to Strike is GRANTED IN PART and DENIED

IN PART, and EMIS's Motion for Summary Judgment is DENIED.

I.      FACTS

EMIS is a marine service company which provides fuel, docking, stores, harbor boats, and

other assist vessels to aid the maritime transportation industry on the Mississippi and Yazoo Rivers. EMIS has a facility at 436.4 Lower Mississippi River ("LMR"), just above the I-20 bridge, which is located at 435.7 LMR.

On the afternoon of March 23, 2011, a tug owned by Marquette Transportation Co., LLC ("Marquette"), the M/V KAY A. ECKSTEIN, was southbound on the Mississippi River pushing a 30-barge tow.  The tug was piloted by Hugh Low, an employee of Bluegrass Marine, LLC ("Bluegrass").  While passing through the old I-80 bridge, barge BUNGE-489, the second lead barge from starboard, struck the left descending channel span pier (also referred to as the number 2 pier) of the bridge, causing the tow to break apart at 1430 hours.  The starboard lead barge, SCF-2301, was set adrift and contacted the left descending channel span ("Pier E-1") of the I-20 bridge.

Herman Smith, a Superintendent of the Vicksburg Bridge Commission, was on duty the day of the accident.  According to Herman Smith, he received a telephone call from Albert Smith of EMIS notifying him that an allision was imminent.  Herman Smith checked the position and operation of the Vicksburg Bridge Commission's cameras and then went outside where he witnessed the allision.

EMIS was contacted by Captain Low to respond to the emergency.

After observing EMIS vessels assisting in the collection of the barges, within 30-45 minutes of the allision, Herman Smith avers that he called Albert Smith to suggest that they push the SCF-2301 off Pier E-1 and into the navigation channel.  However, SCF-2301 remained lodged at Pier E-1 for approximately 2 hours until it spiraled down into a ninety-degree rotation to the bed of the Mississippi River, where it came to rest at a perpendicular angle against the base of the pier.

After at least five unsuccessful attempts, on April 19, 2011, the SCF-2301 barge was

2

removed from the Mississippi River.

On March 21, 2012, DOTD filed suit against Marquette and the then-unnamed pilot of the M/V KAY A. ECKSTEIN.   DOTD later amended the initial Complaint, but still did not name EMIS as a Defendant.   The named parties engaged in discovery, motion practice, and the filings of numerous pleadings.   Almost one and one-half years after the lawsuit commenced, on August 2, 2013, DOTD named EMIS as a Defendant in its Third Amended Complaint.

## II.   LAW AND ANALYSIS

EMIS now moves the Court for summary judgment, contending that DOTD's claim against it, if any, is extinguished by the doctrine of laches because the delay in naming EMIS is inexcusable and has caused prejudicial harm to EMIS.   In response, DOTD moves to strike the supporting affidavit of EMIS Vice President Danny Koestler ("Koestler"), asserting that it is not based on personal knowledge and contains averments that are inadmissible into evidence.   DOTD further opposes EMIS' Motion for Summary Judgment on the basis the EMIS bears the burden of proof and has not shown that DOTD's delay is both inexcusable and prejudicial.   Even if DOTD bears the burden of proof, DOTD contends that its delay was excusable, and EMIS has not suffered substantial prejudice.

### A.   Motion to Strike

The Court will first address DOTD's Motion to Strike Koestler's affidavit.

A motion to strike an affidavit filed in support of, or in opposition to, a motion for summary judgment is governed by Rule 56(c)(4) of the Federal Rules of Civil Procedure.   Rule 56(c)(4) provides:

Affidavits or Declarations. An affidavit or declaration used to support or oppose a

> motion must be made on personal knowledge, set out facts that would be admissible
> in evidence, and show that the affiant or declarant is competent to testify on the
> matters stated.

While an affiant is not required to state specifically that the affidavit is based upon his personal knowledge, the affidavit must contain enough factual support for a court to determine that the averments were based upon the affiant's personal knowledge. *See Thomas v. Atmos Energy Corp.*, 223 Fed. App'x. 369, 374 (5th Cir. 2007). The factual averments set forth in an affidavit must be admissible in evidence and cannot be conclusory or based on mere information and belief. *See Richardson v. Oldham*, 12 F.3d 1373, 1378-79 (5th Cir. 1994). A lay person may offer "opinions or inferences . . . rationally based on [his] perception," which are "helpful to clear understanding of [his] testimony or the determination of a fact in issue," but he may not give an expert opinion. FED. R. EVID. 701. If a district court determines that portions of an affidavit are inadmissible, it may disregard or strike the inadmissible portions without striking the entire affidavit. *See W.O. Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 531 (5th Cir. 1992).

In support of its Motion for Summary Judgment, EMIS attached Koestler's affidavit. Koestler avers that the affidavit is based on his personal knowledge. [Doc. No. 170-3 , ¶4, Koestler Affidavit]. Koestler then avers facts related to the March 23, 2011 allision. Finally, Koestler avers in paragraph 13:

> EMIS has been prejudiced by the delay in Plaintiff's filing an action against it. EMIS
> is called to respond to several bridge allisions each year by virtue of its location just
> above the I-20 bridge. As such, memories have faded or become confused and
> several witnesses are no longer competent to testify.

*Id.* at ¶ 13.

DOTD moves the Court to strike Koestler's affidavit, particularly paragraph 13, because the

affidavit contains "conclusory and self-serving statements that are hearsay, and which have been controverted by evidence." [Doc. No. 185-1, p. 3].   Specifically, DOTD points to Koestler's averments that "memories have faded or become confused and several witnesses are no longer competent to testify"[Doc. No. 170-3, Koestler Aff., ¶ 13] and characterizes these averments as "self-serving, conclusory and not based on the affiant's personal knowledge." [Doc. No. 185-1, p. 4].   DOTD further asserts that the Court should strike Koestler's affidavit because his averments have been refuted by discovery responses and by emails between DOTD's counsel, José´ Cot, and EMIS's employee, Albert Smith.

EMIS opposed the Motion to Strike, attaching a supplemental affidavit from Koestler who explained that the statements in paragraph 13 of his original affidavit were based on his personal knowledge.   Koestler has himself confused the event at issue in this lawsuit with "other similar events." [Doc. No. 193-1, Supplemental Koestler Affidavit, ¶ 6]. He is also personally familiar with other EMIS employees, "such as Albert Smith, who also confuse this event with other events that have happened since[.]" *Id.* at ¶ 7.   Finally, Koestler avers that he is "personally aware of EMIS individuals who now suffer from health conditions that impair their memory, but [he has] not identified them by name due to concerns for their privacy."  *Id.* at ¶ 8.

EMIS argues further that the emails relied on by DOTD do not refute Koestler's affidavit, but, instead, show only that DOTD sought to schedule the deposition of Albert Smith, who was then a non-party.   EMIS points out that DOTD did not attach any discovery to its motion.   Finally, in a footnote, EMIS argues that, even if the Court were to strike part of Koestler's affidavit, it should consider the remainder.

In a reply, DOTD argues that Koestler's supplemental affidavit does not resolve the

5

problems with his original affidavit.  DOTD contends that Koestler's memory can be refreshed with photographs, video, EMIS's records, and Coast Guard reports.  DOTD points out that there is a slideshow on EMIS's website of the March 23, 2011 allision in which Koestler appears.  DOTD further contends that Koestler cannot offer averments about the memory of Albert Smith in violation of Federal Rule of Evidence 801.  Smith's memory can also be refreshed.  Last, DOTD reiterates that Koestler's averments are conclusory and self-serving.

Finally, in its sur-reply memorandum, EMIS agrees that both Koestler and Albert Smith are fact witnesses who may be deposed, but that does not change Koestler's testimony on the prejudice suffered by EMIS because of DOTD's delay in bringing suit.  Koestler's affidavit is based on personal knowledge, sets out facts which are admissible into evidence, and upon which he is competent to testify.  While Koestler and Smith are aware of the incident at issue and may give deposition testimony, EMIS argues that DOTD "should have subpoenaed and deposed . . . Koestler and . . . Smith years ago instead of suing EMIS over two years after the alleged incident." [Doc. No. 201, p. 3].

The Court has reviewed the memoranda and Koestler's affidavit and supplemental affidavit and finds that the Motion to Strike should be GRANTED IN PART and DENIED IN PART.  First, the Court finds that Koestler's affidavit was properly offered to show his knowledge, as Vice President, of the events on the day of and following the March 23, 2011 allision.  Second, the affidavit was properly offered to show Koestler's own state of mind or lack of recollection of the allision.  Finally, the supplemental affidavit was properly offered to show that Koestler has personal knowledge that Albert Smith has confused the allision at issue with other events.  To the extent that DOTD has argued that Koestler's testimony about Albert Smith is hearsay, the Court disagrees.  By

definition, hearsay requires that there be a "statement" offered "for the truth of the matter asserted." FED. R. EVID. 801(c) ("'Hearsay' means a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").  Koestler is not testifying as to any statement made by Albert Smith, only that he knows Koestler confused this event with others.  While his knowledge may be based on statements by Albert Smith, he is not attempting to testify about those statements or offering those statements for their truth.  Instead, he is testifying only about Albert Smith's state of mind.

However, even after reviewing the additional statements contained in the supplemental affidavit, the Court finds that the first and third sentences of paragraph 13 of the original affidavit must be stricken.  EMIS cannot rely on conclusory averments from Koestler on prejudice, nor can he generally testify about faded or confused memories or incompetent witnesses.  Likewise, although no motion to strike the supplemental affidavit is pending, the Court will not consider paragraph 8 of that supplemental affidavit.  While the Court is sympathetic to Koestler's desire to protect the privacy of EMIS employees, under the Federal Rules of Evidence, the Court cannot base its decision on speculation and hearsay.

DOTD's Motion to Strike [Doc. No. 185] is GRANTED IN PART and DENIED IN PART. The first and third sentences of Koestler's affidavit are STRICKEN.  The Court will consider Koestler's statements about the allision, his own memory, and his observations of Albert Smith's confusion of this allision with other events in the affidavit and supplemental affidavit. The Court will not consider Koestler's statements as to the memory or state of mind of other employees in the second sentence of paragraph 13 of the affidavit or in paragraph 8 of the supplemental affidavit.

### B.    Motion for Summary Judgment

### 1.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

The Fifth Circuit Court of Appeals has instructed that, when no jury demand is made, a

court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . .  A trial

8

on the merits would reveal no additional data.  Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony. The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

*Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978) (citations omitted).  Thus, where "the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions." *Id.; see also Matter of Placid Oil Co.*, 932 F.2d 394, 397-98 (5th Cir. 1991) (same).

### 2.      Doctrine of Laches

In this case, EMIS argues that the doctrine of laches bars DOTD's action against it.  Applying the one-year prescriptive period under Louisiana law, EMIS contends that the claim against it was filed outside the prescriptive period, and, thus, DOTD bears the burden of proving that its delay was excusable and that EMIS suffered no undue prejudice because of the delay.  In opposition, DOTD argues that the analogous statute of limitations is not found under Louisiana law, but under Mississippi law because the cause of action accrued on the Mississippi side of the river and bridge.  Accordingly, DOTD argues that EMIS bears the burden of establishing that its filing delay was inexcusable and that EMIS suffered no undue prejudice.

Because the Court has admiralty jurisdiction over this case, it must apply substantive maritime law.  EMIS has raised the affirmative defenses of laches.  The federal maritime concept of laches is an equitable doctrine entrusted to the discretion of the trial court which must determine whether a party's delay in bringing a claim should bar the suit.  *See Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir. 1980).  Because laches is an equitable doctrine, it cannot be determined solely by a mechanical application of an analogous statute of limitations.  *See*

9

*Gardner v. Panama R.R. Co.*, 342 U.S. 29, 31, 72 S.Ct. 12, 96 L.Ed. 31 (1951).  As the Fifth Circuit

has instructed, "[r]ather than marking an absolute cut-off date beyond which injured parties may no

longer effectively bring suit, the analogous limitations period determines where falls the burden of

proving or disproving inexcusable delay and resulting prejudice."  *Barrois v. Nelda Faye, Inc.*, 597

F.2d 881, 884-85 (5th Cir. 1978) (citation omitted).  If the claim was filed within the analogous

statute of limitations, then the defendant bears the burden of proof.  Conversely, if the claim was

filed outside the analogous statute of limitations, the plaintiff bears the burden of proof.  The Fifth

Circuit imposes a three-part test to analyze the strength of a laches defense: (1) whether there was

delay in asserting a claim; (2) whether the delay was excusable; and (3) whether the delay resulted

in undue prejudice to the party against whom the claim is asserted.  *See West Wind Africa Line, Ltd.

v. Corpus Christi Marine Services, Co.*, 834 F.2d 1232, 1234 (5th Cir. 1988) (citing *Mecom v.

Levingston Shipbuilding Co.*, 622 F.2d 1209 (5th Cir.1980))

     In this case, DOTD contends that it suffered property damage based on the negligence of

EMIS and others.  Such a claim sounds in tort.  Under Louisiana law, a one-year prescriptive period

applies.  *See* La. Civ. Code art. 3492, 3493.  However, under Mississippi law, a three-year statute

of limitation period applies.  Thus, the Court must first resolve which state's prescriptive period or

statute of limitations should apply.  DOTD argues that Mississippi's statute of limitations period

applies because the "damage to the bridge pier occurred on the Mississippi side of the I-20

Mississippi River Bridge, EMIS's tortious conduct occurred in Mississippi, the Vicksburg Bridge

Commission of Warren County, Mississippi called upon EMIS from its Mississippi office and EMIS

is a resident of and incorporated in the state of Mississippi." [Doc. No. 172, p. 8].  In contrast, EMIS

argues that the Louisiana prescriptive period applies because the federal district court applies the

analogous state law prescriptive period or statute of limitations for the state in which the court is located. [Doc. No. 173, p. 1].

While there is no precedent on this issue, the Court finds that Louisiana's one-year prescriptive period should apply.  EMIS is correct that federal district courts have consistently applied the analogous state law statute of limitations or prescriptive period of the forum state. However, DOTD is also correct that in each of the cases there was no conflict as to which state law should apply.  Nevertheless, even if Mississippi law might apply under some circumstances, the Court finds that Louisiana law should apply in this case.[1]  Despite its assertions in the opposition memoranda, DOTD has previously admitted that there was no damage to the bridge pier on the Mississippi side.  Instead, DOTD alleges that EMIS was

> negligent in failing to adequately respond to the casualty and ensuring state of
> emergency, and failing to promptly release the barge from its position against Pier

---

[1]Federal maritime choice-of-law questions are generally decided under the seven-factor test established by the Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), as amended in *Romero v. International Terminal Operating Co.*, 358 U.S. 354 (1959), and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970).  The *Lauritzen* case involved a Jones Act plaintiff, but the factors have been applied generally to maritime disputes.  However, the factors are more conducive to determining whether foreign or domestic law should apply, rather than a choice between the law of two states.  *See Rhoditis*, 398 U.S. at 309 (Courts should consider 1) the place of the wrongful act; 2) the law of the flag; 3) the allegiance or domicile of the injured; 4) the allegiance of the shipowner; 5) the place of contract; 6) the inaccessibility of a foreign forum; 7) the law of the forum; and (8) the shipowner's base of operations).  Although weak, at the least, the factor of the law of the forum indicates that Louisiana law would determine the statute of limitations or prescriptive for the limited purposes used herein.

If the Court were to look to Louisiana choice of law principles, applicable in diversity actions, the Court would reach the same result.  "Louisiana courts customarily apply the law of the forum, i.e., Louisiana law, to the issue of limitations.  An exception is that a Louisiana court will apply a foreign statute of limitations where it is an inherent part of the substantive law giving rise to the right of action."  *Rohde v. Southeastern Drilling Co., Inc.*, 667 F.2d 1215, 1219 (5th Cir. 1982) (citing *Kozan v. Comstock*, 270 F.2d 839 (5th Cir. 1959)).  In this case, the substantive law at issue is general maritime law; Mississippi law is not at issue.

> E1 before it sank, and thereby prevent the perpendicular rotation and eventual sinking of Barge SCF-2301-B against Pier E1, and the ensuing aggravation of the scouring area and scour hold in proximity to and down river from the Interstate 20 Bridge, which threatened the safety of the motorists and the stability and integrity of the bridge and led to the declaration of the state of emergency.

[Doc. No. 137, ¶ 8].  DOTD further contends that it has "sustained damages . . . . for the cost of responding to the state of emergency, including repairs to the aforementioned scouring progression." [Doc. No. 137, ¶ 14].  Thus, it is clear that, even if EMIS's alleged tortious conduct occurred on the Mississippi side of the river, it is Louisiana, through the DOTD, which has an interest in the problems leading to it declaring a State of Emergency and the resulting repairs.

Having determined that Louisiana law is applicable, it is clear that DOTD did not assert its claim against EMIS within the one-year prescriptive period.  "Where, as here, the statute has run prior to instituting suit, the plaintiff must prove either absence of prejudice or excuse for delay to repel a claim of laches." *Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir. 1980) (citing *Watz v. Zapata Off-Shore Co.*, 431 F.2d 100 (5th Cir. 1970)).  Though DOTD bears the burden of proof on the two elements, the Fifth Circuit has explained that "the importance of proving of an excuse for delay" is closely tied to the prejudice, or lack of prejudice, suffered by the defendant. *Watz*, 431 F.2d at 112.  Thus, a "'thin excuse may turn out to be bearable because no harm is suffered.'" *Id.* (quoting *Molnar v. Gulfcoast Transit*, 371 F.2d 639, 642 (5th Cir. 1967) (internal quotation marks omitted)).  Indeed, in the absence of harm or prejudice, even an "unexcused delay . . . would not bar a suit." *Id.* (citing *Crews v. Arundel Corp.*, 386 F.2d 528, 530)).

Although DOTD bears the burden of proof, as movant, EMIS initially argues that DOTD cannot establish that its delay was excusable when DOTD knew or should have known of EMIS's involvement since the date of the allision on March 23, 2011.  EMIS's involvement in the aftermath

of the allision was "blatant and apparent," and, even if DOTD did not know immediately afterward, DOTD could easily have discovered EMIS's involvement. [Doc. No. 170-2, p. 8].  At the latest, EMIS contends that DOTD knew of EMIS's involvement by the time it filed suit on March 21, 2012.

DOTD contends that there is a genuine issue of material fact whether its delay in filing against EMIS was excusable.  Although DOTD was aware from the beginning of the lawsuit that EMIS recovered barges after the allision, DOTD claims that until this past summer it believed that Marquette called, supervised, and organized EMIS's emergency response and, thus, EMIS acted only as an agent for Marquette.  This past summer, DOTD learned of EMIS's "independent involvement in failing to secure Barge SCF-2301-B before it sank" from Herman Smith, the Superintendent of the Vicksburg Bridge Commission.  [Doc. No. 184, p. 6].  At that time, Herman Smith "confirmed that he placed a telephone call to EMIS requesting that it push Barge SCF-2301-B from the bridge pier."  *Id.*  Once DOTD realized that EMIS might have an independent role, counsel for DOTD contacted EMIS's employee, Albert Smith, to try to schedule his deposition and to obtain all records, videos, and correspondence. [Doc. No. 172, p. 9].  DOTD then attempted to investigate EMIS's alleged involvement, but was forced to file suit because EMIS failed to cooperate in scheduling Albert Smith's deposition or providing the requested records and the deadline to join parties was about to expire.

In response, EMIS argues that DOTD's reasoning for delay is flawed.  Even if EMIS had been contracted by Marquette, EMIS contends that it would have had independent liability as a contractor.  Additionally, DOTD did not issue a subpoena to depose Albert Smith or obtain the documents it desired from EMIS.  In short, EMIS contends that DOTD's own "ignorance of facts" is based on its lack of inquiry and does not render its delay in filing suit excusable. [Doc. No. 173,

p. 4 (internal quotation marks and citation omitted)].

While the Court is sympathetic to EMIS's concerns, DOTD has offered a plausible reason for its delay.  The Court should not be in the business of encouraging plaintiffs to unnecessarily file suit against a defendant just to avoid a later laches defense when it is unclear that the potential defendant has any liability.   Thus, the Court finds that EMIS has at least raised a genuine issue of material fact for trial whether its delay in filing suit was excusable.

Next, EMIS argues that DOTD's delay caused it to suffer substantial prejudice because memories of the event have faded, and the other parties in this case have already engaged in substantial discovery and motion practice.  Specifically, DOTD's Vice-President, Koestler, avers that both he and Albert Smith have become confused about this allision because of the number of other similar events which have taken place during the past two years.

While the issue is close, the Court finds that DOTD has raised a genuine issue of material fact for trial that EMIS has not suffered substantial prejudice as a result of the delay.  EMIS retained records, including a slideshow of this event.  Although, as EMIS points out, "[d]efense prejudice may include . . . fading memories . . . .[,] " *Ryan Marine Servs., Inc. v. Hudson Drydocks, Inc.*, No. 06-2245, 2011 WL 3739047, at *3 (W.D. La. Aug. 23, 2011) (other citations omitted), *quoted in* [Doc. No. 173, p. 4], it has not been sufficiently proven at this point that Koestler's and Albert Smith's memories are so faded as to render them unable to assist in EMIS's defense.  Finally, EMIS is correct that a large number of motions and pleadings have already been filed in this case, but it does not appear to the Court that the pleadings, motions, or rulings rendered have worked a

14

disservice to EMIS.[2]   The Court finds that DOTD has also raised a genuine issue of material fact for trial whether its delay in filing caused EMIS to suffer substantial prejudice.[3]

## III.   CONCLUSION

For the foregoing reasons, DOTD's Motion to Strike [Doc. No. 185] is GRANTED IN PART and DENIED IN PART.   The first and third sentences of paragraph 13 of Danny Koestler's ("Koestler") affidavit are STRICKEN.   The Court considered the remainder of Koestler's affidavit, including the second sentence of paragraph 13, in ruling on Ergon Marine & Industrial Supply, Inc.'s ("EMIS") Motion for Summary Judgment [Doc. No. 170].   The Court also considered Koestler's supplemental affidavit except for paragraph 8.   EMIS's Motion for Summary Judgment [Doc. No. 170] is DENIED.

MONROE, LOUISIANA, this 27th day of February, 2014.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[2]If EMIS contends that the Court has issued a ruling to its detriment without benefit of its input, the Court would consider any appropriate motion EMIS finds necessary to file.

[3]EMIS may continue to assert its laches defense, and the Court will consider the defense at trial in this matter.